IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RITVA RAUHALA** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **GREATER NEW YORK** | : | |
| **MUTUAL INSURANCE, INC.** | : | **NO. 22-1788** |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                         **October 31, 2022**

After removing this putative class action from the Philadelphia Court of Common Pleas, defendant Greater New York Mutual Insurance Company ("GNY") moves to transfer it to the United States District Court for the Southern District of New York,[1] where most of the evidence and witnesses are located, and most of the operative facts giving rise to the claims occurred. Opposing the motion, Rauhala argues that she resides in this district and she had no connection to GNY in New York. She also asserts that it would be inconvenient for her, an elderly person with physical limitations, to participate in the litigation in New York.

Balancing the private and public interest factors of convenience and fairness, we find that they weigh in favor of transfer. Therefore, we shall grant the motion.

## Background

Rauhala settled a personal injury lawsuit she brought against GNY's insured in the Court of Common Pleas of Montgomery County, Pennsylvania. To process the settlement check, GNY required her to provide her personally identifiable information,

---

[1] After GNY filed the motion to transfer venue, Rauhala moved to remand the action to the state court. We denied her motion on October 31, 2022. *See* Doc. No. 28.

specifically her Social Security number, date of birth, address, banking information, and medical history and billing records ("PII/PHI").

From May 23 to June 1, 2021, GNY's network and computer systems fell victim to a cyberattack when unauthorized individuals gained access to its Information Technology ("IT") system. On October 20, 2021, after discovering its system had been breached, GNY notified claimants, customers and employees of GNY that their PII/PHI may have been accessed and stolen from its system.[2] According to the notice, an investigation revealed that cybercriminals had used ransomware to access the PII/PHI, and GNY could not rule out that the data had been exfiltrated.

Rauhala filed this putative class action against GNY in the Court of Common Pleas of Philadelphia County, individually and on behalf of approximately 34,000 others "impacted by the Data Breach."[3] Alleging that her and class members' PII/PHI was accessed, stolen and sold on the Dark Web as a result of the data breach, she asserts state law claims for negligence, unjust enrichment and invasion of privacy.[4]

GNY removed the action based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which confers original jurisdiction over class-action lawsuits. It now moves, under 28 U.S.C. § 1404(a), to transfer this action to the United States District Court for the Southern District of New York.

---

[2] Compl. (Doc. No. 1, Ex. 1) ¶¶ 3, 19, 25–26, 29, 31–34.

[3] Compl. ¶¶ 5, 122–23, 125.

[4] Compl. ¶¶ 7–9, 35–36, 77.

**Discussion**

A defendant moving for transfer of venue bears the burden of demonstrating that: (1) the case could have been brought initially in the proposed district; (2) the proposed district will be more convenient for the parties and the witnesses; and (3) transfer will be in the interest of justice.  28 U.S.C. § 1404(a); *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995)); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

Rauhala could have brought this action in the Southern District of New York where GNY is headquartered.  Venue is proper in any judicial district in which any defendant "resides." *See* 28 U.S.C. § 1391(b)(1).  A defendant entity resides in any judicial district where it is subject to the court's personal jurisdiction in the action at issue.  *Id.* § 1391(c)(2).

Once the defendant establishes that the action could have been brought in the proposed district, the court must weigh several private and public interest factors to determine whether the balance of convenience tips in favor of transfer.  *In re Howmedica Osteonics Corp*, 867 F.3d 390, 401 (3d Cir. 2017) (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 & n.6 ( 2013); *Jumara*, 55 F.3d at 879)). Among the "private interest" factors considered in determining whether transfer is more convenient for the parties are: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) the place where the claim arose; (4) the relative ease of access to the sources of proof; (5) the convenience of the parties in light of their relative financial status and physical location; (6) the availability of compulsory process for the attendance of witnesses; (7) the convenience of the witnesses; and (8) the practical problems that

make trial of a case expensive and inefficient.  To determine whether the transfer is in the interest of justice, "public interest" factors include congestion of court dockets and the relationship of the jury and the community to the underlying district, creating a "local interest in deciding [the] local controvers[y]" there.  *Howmedica*, 867 F.3d at 402 (quoting *Jumara*, 55 F.3d at 879-80)*.*  Depending on the nature and the facts of the case, these factors overlap and are intertwined.

Because the analysis involved is "flexible and individualized," a court has broad discretion in deciding a motion for transfer of venue.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  Despite this wide latitude, a court must carefully weigh the factors favoring and disfavoring transfer.  *See Shutte*, 431 F.2d at 25.

### The "Private Interest" Factors

*The plaintiff's choice of forum*

The plaintiff's choice of forum typically receives "paramount consideration."  *Id.*; *see also Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013).  The plaintiff's choice of her home forum is given greater deference.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 & n.23 (1981) (citing *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

However, in class actions, the plaintiff's choice is given less deference because the potential class members are scattered throughout numerous states.  *Koster*, 330 U.S. at 524; 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 2:46 (18th ed. 2021); s*ee also* 2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 6:42 (6th ed. 2022) (the "diminished deference" to the plaintiff's choice of forum in class actions

"reflects the probability that . . . there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class's claim") (internal citations omitted).[5]

Rauhala is one of 34,000 putative class members. More than half of GNY's policies are issued in New York and only 2.6% are issued in Pennsylvania.[6] Less than four percent of the 34,000 putative members who received notice of the breach from GNY reside in Pennsylvania.[7] The remainder of the class members reside in many different districts where each could presumably file this lawsuit in his or her home district. Furthermore, as we note later, Rauhala is not expected to participate extensively in pre-trial proceedings or trial. Therefore, we do not give the usual deference to her choice of forum.

*The defendant's preferred forum*

GNY prefers the Southern District of New York because it is where its headquarters and most of its witnesses are located, and most of the operative facts giving rise to the claim occurred. Thus, the defendant's choice of forum favors transfer.

---

[5] Although *Koster* involved a policyholder's derivative action, district courts in the Third Circuit have applied its reasoning to class actions. *Scanlan v. Am. Airlines Grp., Inc.*, 366 F. Supp. 3d 673, 677 (E.D. Pa. 2019) (citing *Koster*, 330 U.S. at 519) (collecting cases); s*ee, e.g., Impervious Paint Industries, Ltd. v. Ashland Oil, Inc.*, 444 F. Supp. 465, 467 (E.D. Pa. 1978) ("where there are many potential plaintiffs scattered across the country, the [forum] choice of th[e named] plaintiff deserves less weight") (citing *Koster*, 330 U.S. 518).

[6] Decl. of Thomas D. Hughes in Support of GNY's Mot. to Change Venue (Doc. No. 12-1) ("Hughes Decl.") ¶ 4; GNY's Reply in Support of Mot. to Transfer Venue (Doc. No. 22) ("GNY's Reply") at 4.

[7] GNY's Mot. to Change Venue (Doc. No. 12) at 4.

*The place where the claim arose*

Where the claim arose implicates other factors in the analysis. It involves questions of access to proof, convenience of the parties and the witnesses, availability of witnesses, and efficiency concerns. Hence, determining the place where the claim arose will inform the evaluation of these other factors.

Rauhala asserts that her personal injury lawsuit in Pennsylvania gave rise to the claims in this case. To obtain payment of the settlement of her lawsuit, she gave GNY her confidential personal information that was later stolen. Her personal injury suit was based on injuries sustained in Pennsylvania and was filed in Pennsylvania against GNY's insured. Similarly, the release of her claims against GNY's insured in the personal injury action was governed by Pennsylvania law.[8] None of the facts in her underlying personal injury claim have a bearing on the appropriate forum for this unrelated data breach case.

Rauhala also contends that the effects of the data breach were "felt in Pennsylvania," where she received GNY's notice of the breach and where GNY took steps to mitigate the effects of the breach.[9] But, most, if not all, of the operative facts that gave rise to the data breach claims occurred in the Southern District of New York where GNY is headquartered. The claims arise from GNY's purported failure to properly maintain and safeguard its network and computer systems to protect the PII/PHI from unauthorized access and disclosure. GNY's in-house attorneys, its information technology ("IT") team, and others with personal knowledge of GNY's data security policies and procedures and of the ransomware attack work from its headquarters. Most

---

[8] Pl.'s Resp. to GNY's Mot. for Change of Venue (Doc. No. 19) ("Pl.'s Resp.") at 2–3.

[9] *Id.* at 8.

of GNY's databases are located there.[10]

Approximately half of GNY's insurance policies are issued in New York.[11] Consequently, most class members would feel the effects of the data breach in New York. Even if the class members were more widely spread across the country, the effects of the data breach would be "felt in Pennsylvania" by only four percent of the class members. The 96% of the class members who reside outside of Pennsylvania would not feel the effects of the breach in Pennsylvania. Thus, where the claims arose favors transfer.

### *The relative ease of access to the sources of proof*

Most of the relevant documents, witnesses and evidence are located in New York. Although some of the documentary evidence can be produced electronically, much of it will be generated in New York where it is located. Evidence will be collected from GNY's servers which house the database storing the personal information. Most servers are located at GNY's headquarters in New York.[12] Additionally, most of the relevant witnesses are employees of GNY who work from its headquarters. Therefore, this factor favors transfer.

### *The convenience of the parties*

Rauhala asserts that as an 82-year old retiree with physical limitations due to a medical condition, it will be inconvenient and a financial burden for her to travel to New

---

[10] Hughes Decl. ¶ 8.

[11] GNY's Reply at 4.

[12] Hughes Decl. ¶ 8.

York to be deposed as well as "to attend what could end up being a multi-week trial" away from her home.[13] She asserts that it is" far more convenient for a multi-hundred-million-dollar profit per year corporation like GNY to litigate in Philadelphia than it is for [her] to litigate in New York City."[14]

Acknowledging that it has more resources than Rauhala, GNY contends that it would be considerably inconvenienced by transporting its employees and representatives to and from Philadelphia, compared to the plaintiff who need only transport herself.

In reality, Rauhala will have a minimal role in the litigation. Class representatives rarely participate in the case beyond initiating the lawsuit and presenting for a deposition. As a result, she will experience little or no inconvenience if the case is transferred to New York. She can be deposed in this district or by Zoom. Because the burden on GNY would be greater if this litigation remained in Pennsylvania, the convenience of the parties factor weighs in favor of transfer.

*Compulsory process for the attendance of witnesses*

Most non-party witnesses are located in New York. None are located in Pennsylvania. Consequently, they are beyond 100 miles of Philadelphia. Under these circumstances, the availability of compulsory process for the attendance of witnesses favors transfer.

---

[13] Pl.'s Resp. at 3–4, 9.

[14] *Id.* at 4, 9.

8

*The convenience of the witnesses*

Other than the plaintiff, the material witnesses, including individuals at GNY with personal knowledge of the ransomware attack and other IT service providers related to this matter likely to have relevant information, are located in New York.  Thus, the convenience of the witnesses strongly favors transfer.

*The practical problems that make trial of a case expensive and inefficient*

If the case is litigated in this district, GNY's inconvenience will outweigh the minimal, if any, inconvenience to Rauhala.  Although GNY has a greater ability to absorb travel costs than Rauhala, trying this case in the Southern District of New York, where the claims arose and most of the witnesses are located, will be more efficient than resolving the case here.

The actions or omissions giving rise to Rauhala's claims occurred in New York.  The relevant evidence, including the servers and key witnesses, are located in New York.  Thus, consideration of the private factors favors transfer to the Southern District of New York.

The "Public Interest" Factors

Trial in this district will impose jury service upon citizens who have little connection to the dispute or the parties.  The events giving rise to this action occurred in New York, and any local interest in litigating this matter in Pennsylvania is substantially reduced by the potential presence of 34,000 other litigants.  The interests of states where other putative class members reside is no less than Pennsylvania's.  A Southern District of New

York jury has an interest in the resolution of the dispute that arose there and where the alleged wrongdoer is, creating a "local interest in deciding [a] local controvers[y]" there.

Because the Southern District of New York has an interest in resolving this case and the Eastern District of Pennsylvania has little interest, and the congestion of the courts factor is neutral, we conclude that the public interest factors weigh in favor of transfer.

## Conclusion

The private and public interest factors of convenience and fairness weigh in favor of transferring the case to the Southern District of New York. Therefore, in the interest of justice, we shall grant the motion to transfer venue.